UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| AMY VAENKHAM, | Case No.: 1:16-cv-001756-BAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff Amy Vaenkham ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income and disability insurance benefits ("benefits") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1] Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, the Commissioner's determination is REVERSED AND REMANDED for further proceedings.

---
[1] The parties consented to the jurisdiction of a United States Magistrate Judge Barbara A. McAuliffe. (Doc 7, 8).

1

## II. BACKGROUND

Plaintiff applied for benefits on December 13, 2012, alleging that she became disabled as of August 11, 2011, later amended to April 10, 2013. AR 45, 229, 231. The Commissioner denied the applications initially and upon reconsideration. AR 116, 129-133. On March 17, 2015, a video hearing was held before ALJ Regina L. Sleater. AR 28-55. Plaintiff, along with her attorney and a Laotian interpreter, appeared and testified. AR 28. The ALJ also heard testimony from Thomas Dachelet, a vocational expert. AR 47-54. Impartial medical expert Chukwuemeka Ezike also testified. AR 42-47.

In a decision dated May 29, 2015, the ALJ found that Plaintiff was not disabled because, despite some impairment, Plaintiff retained the residual functional capacity (RFC) to perform light work. AR 10-21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. AR 9-12; 42 U.S.C. §§ 405(g), 1383(c). This appeal followed.

## III. STANARD OF REVIEW

### A. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### B. Disability Standard

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he has an impairment of such severity that he is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.

### C. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 10, 2013, the alleged onset date. AR 12. The ALJ identified chronic hepatitis B, anemia, and depression as severe impairments. AR 13. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal any of the listed impairments. AR 13-14.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform restricted light work with hazard precautions, and she could perform simple, routine tasks with occasional detailed work and no adaption to change. AR 14.

The ALJ subsequently found that Plaintiff is capable of performing her past relevant work as a meat packer. Additionally, given Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that she could perform. AR 19-20.

## IV. DISCUSSION[2]

In three issues, Plaintiff contends that the ALJ failed to properly consider the medical opinions provided by: (1) the psychiatric consultative examiner; (2) the non-examining state-agency physician;

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

and (3) the non-examining state agency psychiatrists. (Doc. 14 at 6-16). As set forth below, the Court agrees with Plaintiff, in part, and remands the matter for further proceedings.

### A. The ALJ Erred In Evaluating Plaintiff's Mental Limitations

Plaintiff first contends that the ALJ erred in weighing the evidence pertaining to her mental impairment. (Doc. 14 at 6-16). Specifically, Plaintiff asserts that the ALJ, in reaching the RFC determination, failed to provide adequate explanation for rejecting the opinions of the nonexamining state agency psychiatrists P.M. Balson, M.D. and D. Funkenstein who opined that Plaintiff can only perform work involving simple one- to two-step tasks. (Doc. 14 at 14-18); AR 95. Plaintiff further contends that the ALJ erred in weighing the opinion of psychiatric consultative examiner, Michael Cohn, M.D.

#### 1. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The Regulations provide that although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider [their] findings and other opinions ... as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled," because such specialists are regarded as "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f) (2)(i), 416.927(f)(2)(i). The Regulations further provide that "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the

opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2) (ii). *See also* SSR 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

### 2. Omission of the Reviewing Psychiatrists' "1-2 Step Tasks" Limitation

On April 25, 2013, Dr. Balson completed a Mental Residual Functional Capacity Assessment ("MRFC") form in which he opined that Plaintiff is moderately limited in her abilities to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; respond appropriately to changes in the work setting; and interact appropriately with the general public. AR 65-66. In assessing Plaintiff's RFC and elaborating on the limitations described above, Dr. Balson specifically opined that Plaintiff "can learn and remember basic work instructions and tasks of 1-2 steps." AR 65. Dr. Funkenstein later concurred with Dr. Balson's opinion. AR 95.The ALJ's decision does not address or expressly discount the opinions of Drs. Balson and Funkenstein. Nevertheless, the ALJ did not include a limitation to one to two-step tasks in Plaintiff's RFC determination. Instead, the ALJ found that Plaintiff is "able to perform simple, routine tasks with no limitations." AR 14.

Relying on *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015), Plaintiff argues that because there is a critical distinction between "one or two-step tasks" and "simple, routine tasks," the ALJ's failure to expressly reject the reviewing physicians' limitation to one-to-two step tasks without explanation is error. The Court agrees.

Following the Ninth Circuit's decision in *Rounds,* several district courts in this Circuit have reversed ALJ decisions imposing a "simple, repetitive tasks" RFC limit where the ALJs fail to address and distinguish conclusions by doctors that Plaintiffs can perform one-and-two step instructions. For example, in *Burson v. Berryhill*, No.15-CV-4991-DMR, 2017 WL 1065140, at *4 (N.D. Cal. Mar. 20, 2017) (a limitation to one– and two–step instruction work is more restrictive than a limitation to simple, repetitive tasks), after noting that *Rounds* made clear the distinction between a limitation to one-and-

5

two-step instructions and the ability to perform simple, repetitive tasks, the court addressed a factually similar scenario and concluded the ALJ erred in rejecting the reviewing physicians "1-2 step instructions limitation without explanation." *Id.* at *4; *see also Banales v. Berryhill*, No. EDCV 16-1247 AGR, 2017 U.S. Dist. LEXIS 22509, 2017 WL 651941, at *2 (C.D. Cal. Feb. 16, 2017) (remanding where ALJ acknowledged a doctor's functional assessment that claimant could perform one- or two-step instructions, but did not expressly discount that conclusion and instead limited claimant to performing "simple repetitive tasks"); *Wells v. Colvin*, No. 1:15-CV-0285-JLT, 2016 U.S. Dist. LEXIS 124318, 2016 WL 4744668, at *8 (E.D. Cal. Sept. 13, 2016) (remanding where ALJ purported to accept doctor's opinion "who reviewed the medical evidence and concluded Plaintiff could 'sustain simple one-two step repetitive tasks," but "did not adopt this limitation in the RFC, instead limiting Plaintiff to "simple, routine, and repetitive tasks.").

As argued by Plaintiff, the ALJ effectively rejected Dr. Balson's opinion because the limitation to "tasks of 1-2 steps" is more restrictive than the ALJ's limitation to "simple and routine tasks with no limitations." *See Dominguez v. Berryhill*, No. 16-CV-01936-DMR, 2017 U.S. Dist. LEXIS 138173, 2017 WL 3705064, at *6 (N.D. Cal. Aug. 28, 2017) ("The court notes that a limitation to one- and two-step instruction work is more restrictive than a limitation to simple, repetitive tasks."); *Kimble v. Berryhill*, No. 3:15-CV-01641-JE, 2017 U.S. Dist. LEXIS 123305, 2017 WL 3332256, at *4 (D. Or. Aug. 4, 2017) ("[A] limitation to '1-2 step tasks' is more restrictive than a limitation to 'simple, repetitive tasks.'"). While an ALJ may reject the opinion of a non-examining physician, he must do so "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Here, the ALJ gave no reasons for—and in fact did not even acknowledge—her rejection of the reviewing physicians' limitations to "tasks of 1-2 steps." "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The Court therefore concludes that the ALJ erred in this case by rejecting the reviewing physicians' "1-2 step" limitation without providing any reason for doing so.

In response, Defendant asserts that any error here was harmless because the ALJ's limitation to simple, routine tasks sufficiently encompassed Dr. Balson's opinion that Plaintiff can only perform

simple one-to-two-step tasks. (Doc. 15 at 10). The Court disagrees. All jobs listed in the Dictionary of Occupational Titles ("DOT") have general education development ("GED") levels-defined as "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C-Components of the Definition Trailer, 1991 WL 688702 (1991). There are six General Educational Development (GED) Reasoning Levels that range from Level One (simplest) to Level Six (most complex). DOT, App. C, § III, 1991 WL 688702. The lowest two levels are:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Rounds*, 807 F.3d at 1002-03.

The inclusion of Dr. Balson's "1-2 step tasks" limitation in the RFC would have indicated that Plaintiff is restricted to Reasoning Level 1 jobs, while Plaintiff's past relevant work as a "meat packer" and alternative jobs as a palletizer, garment sorter, or automatic pack operator, as identified by the VE, require Reasoning Level 2. *See* AR 48-49; DOT at 929.687-054 (palletizer), 1991 WL 688180; DOT at 222.687-014 (garment sorter), 1991 WL 672131; and DOT at 920.685-082 (automatic pack operator), 1991 WL 687943.

Where there is a conflict between the Reasoning Level reflected in a claimant's RFC and the Reasoning Level required to perform a job identified by the VE, that conflict must be resolved by the ALJ before a court may determine whether the ALJ's decision is supported by substantial evidence. *Zavalin v. Colvin*, 778 F.3d 842, 846-848 (9th Cir. 2015) (remanding so that ALJ could resolve conflict between RFC corresponding to Reasoning Level 2 and jobs identified by the VE which required Reasoning [Level 3); *Rounds*, 807 F.3d at 1003-04 (remanding so that ALJ could resolve conflict between RFC corresponding to Reasoning Level 1 and jobs identified by the VE which required Reasoning Level 2). Thus, if the "1-2 step instructions" limitation had been included in the RFC, the ALJ could not have relied on the jobs identified by the VE to make a non-disability finding without

explaining how a claimant limited to Reasoning Level 1 could perform jobs requiring Reasoning Level 2.

Accordingly, the Court concludes that the ALJ erred in rejecting the reviewing psychiatrists' "1-2 step tasks" limitation without explanation and that the error was not harmless.

### 3. The ALJ Erred in Weighing the Examining Opinion of Dr. Cohn

In further challenging the ALJ's evaluation of the mental impairment evidence, Plaintiff also asserts that the ALJ improperly discounted the psychological consultative evaluation performed by examining physician Dr. Cohn. (Doc. 14 at 6-11).

An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On April 10, 2013, Michael Cohn, Ph. D., performed a psychological consultative evaluation of Plaintiff. AR 565-572. Dr. Cohn administered a mental status examination yielding abnormal findings including significant psychomotor retardation; dysphoric mood; blunted affect; some tearfulness; feelings of helplessness, hopeless, and worthlessness; "very" reduced speech volume and rate; impaired fund of general knowledge, judgment, attention, calculation, and insight; and impaired concentration/calculation. AR 567-569. Dr. Cohn also administered a Bender Gestalt II test which revealed perceptual deficits. AR 569-570. Dr. Cohn observed no evidence of exaggeration, and stated that the test results are valid. AR 567, 570. He diagnosed Plaintiff as suffering from major depression, recurrent, severe, without psychosis and he assessed marked limitations in Plaintiff's ability to maintain concentration and attention, persistence and pace. AR 570-571. Dr. Cohn also assessed moderate

limitations in the following categories: 1) "do" detailed and complex instructions; 2) relate and interact with co-workers and the public; 3) associate with day-to-day work activity including attendance and safety; 4) maintain regular attendance in the workplace, and perform activities on a consistent basis; and 5) perform work activities without special or additional supervision. AR 571.

The ALJ considered Dr. Cohn's opinion as follows:

> I give little weight to Dr. Cohn's opinion because nothing in his report supports such drastic limitations. Furthermore, the limitations are inconsistent with his opinion that the claimant had a Global Assessment of Functioning score of 60 which is on the borderline of moderate and mild impairments.

AR 17.

Based on the above, Plaintiff's argument—namely, that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Cohn's opinion—is persuasive. The ALJ's conclusion that "nothing in Dr. Cohn's report supports his 'drastic' findings," is simply not accurate. The objective medical evidence relied on by Dr. Cohn included abnormal mental status examination findings including psychomotor retardation; dysphoric mood; blunted affect; some tearfulness; feelings of helplessness, hopeless, and worthlessness; "very" reduced speech volume and rate; impaired fund of general knowledge, judgment, attention, calculation, and insight; and impaired concentration/calculation. AR 567-569; *see Bass v. Colvin*, 2014 WL 1330083. at *4 (C.D. Cal. Apr. 3, 2014), *citing Clester v. Apfel*, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury). Dr. Cohn also administered a Bender Gestalt II test which revealed perceptual deficits.

Despite the ALJ's conclusions, Dr. Cohn's report included both his own clinical observations and objective clinical testing indicating that Plaintiff was moderately to markedly limited. Therefore, the ALJ's determination that Dr. Cohn's opinion lacked an evidentiary basis is error. The foregoing incorrect characterization of the medical opinion evidence calls into question the validity of both the ALJ's evaluation of the particular medical opinion evidence as well as the ALJ's decision as a whole. *See,* e.g. *Regennitter v. Commissioner of Social Security Administration*, 166 F.3d 1294, 1297 (9th Cir. 1999).

Further, while an ALJ may properly rely on an inconsistency between a functional assessment and a GAF score in rejecting a physician's opinion, here the ALJ relied on Plaintiff's GAF score in conflicting ways. First, the ALJ discounted Dr. Cohn's examining opinion because, Plaintiff's—presumably reliable—GAF score of 60 was inconsistent with Dr. Cohn's assessed limitations. Then, when weighing the medical evidence submitted by Plaintiff's behavioral health providers, the ALJ rejected a lower GAF score of 55 as unreliable, "due to the scores subjective nature and lack of longitudinal perspective." AR 18. The ALJ thus both accepted and rejected the overall reliability of GAF scores without providing any explanation as to this incongruity.

It is well-established that an ALJ cannot selectively rely on only those portions of the treatment record that support his ultimate conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ('[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.') (citation omitted); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion 'simply by isolating a specific quantum of supporting evidence')."

Given this inconsistent finding, along with the other errors mentioned above, the ALJ has failed to meet her burden of providing an adequate rationale for giving reduced weight to Dr. Cohn's examining opinion.

**B.     The Court Declines to Address Plaintiff's Remaining Arguments**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred in formulating her physical RFC. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand is Required to Remedy the Defects in the ALJ's Decision

Finally, the Court has considered Plaintiff's request to award benefits rather than remand the case for additional proceedings, but finds remand more appropriate. Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (court may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

On remand, the ALJ shall reassess the opinions of Plaintiff's examining and reviewing physicians and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. If necessary, the ALJ shall reassess Plaintiff's RFC, and then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

### V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ will reweigh the medical evidence and address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Amy Vaenkham and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 26, 2018**        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE